## WELCOME FARNUM vs. MOSES BUFFUM.

Where the acknowledgment of a deed is taken and certified by a notary public, his certificate need not be authenticated by his notarial seal.

The third section of *St.* 1848, *c.* 166, requiring that the advertisement of the time and place of sale of real estate taken for taxes shall, " in addition to the provisions contained in Rev. Sts. *c.* 8, § 25, contain a substantially accurate description of the rights, lots or divisions, of the real estate to be sold," is only explanatory of the statute referred to, under which a description, though not expressly required, was necessary, by which the owner might know what rights, lots or divisions were to be sold.

Where, in an advertisement of the time and place of sale of real estate taken for taxes, estates were described in these terms : " M. B. house and land," and " L. E. house, barn and one hundred and fifteen acres of land," L. E. being a tenant of M. B., but H. M. having at the time taken possession of the estates under a mortgage from M. B. to him ; it was held, that H. M. was the owner, and that his name not being stated in the advertisement, there was no sufficient description within the Rev. Sts. *c.* 8, § 25, providing that where the name of the owner is not known to the collector, the advertisement shall state the amount of the taxes on the several rights, lots or divisions of the real estate to be sold.

In proving the posting of a notice, by the collector, of the time and place of sale of real estate taken for taxes, in some convenient and public place within his precinct, three weeks before the time of sale, as required by the Rev. Sts. *c.* 8, § 27, the time when such notice was posted must be fixed with certainty, and its contents must be sufficiently shown, in order to identify it with the notice required to be published by the twenty-fourth section of the same chapter.

THIS was a writ of entry upon a mortgage, to recover seizin and possession of several tracts of land situated in Blackstone, formerly Mendon, in this county, and was tried before *Hopkinson,* J., in the court of common pleas.

The mortgage on which the suit was founded was given by Henry S. Mansfield to Richmond Bullock, bearing date June 29th, 1844, and assigned by the mortgagee to the plaintiff on the 14th of August, 1847. These deeds were duly recorded, but it was objected by the defendant, that the registry of the deed of assignment was inoperative, because Henry Martin, a notary public in the state of Rhode Island, by whom the acknowledgment of the same was taken and certified, did not authenticate his act by a notarial seal. But the court overruled the objection. The demandant then proved that three of the four notes referred to in the condition of the mortgage were due, and there rested his case.

The tenant, having pleaded the general issue, and specified

in defence a paramount title in himself to the demanded premises, by virtue of a sale and conveyance of the same for taxes, gave in evidence a deed from Abel Aldrich, deputy collector of Mendon, to George A. Aldrich, dated September 21st, 1843, of an estate called the Mansion house, and one acre of land, and another deed of the same date, between the same parties, of an estate called the Pitts farm, in the occupation of Loring Emerson, containing one hundred and fifteen acres. These two parcels of real estate, being a part of the demanded premises, were conveyed by George A. Aldrich, on the 1st of February, 1845, to the tenant, who claimed to hold the same against the demandant by the title so acquired. The consideration of the collector's deed of the Mansion house was $44·02, being $37·34, for the tax, and $6·68 for necessary intervening charges; and of the Pitts farm $21·50, being $14·92 for the tax, and $6·58 for charges.

In order to show that the taxes, upon which these sales were made, were duly assessed and collected, the defendant produced in evidence the records of the town of Mendon, from which it appeared, that at a legal meeting of the inhabitants on the 7th of March, 1842, and in pursuance of sufficient articles in the warrant for that purpose, Stephen Taft was chosen and qualified as town clerk and treasurer; that it was voted that the treasurer be collector, with authority to appoint a deputy collector; that three assessors were chosen; that the meeting was adjourned to the first Monday of April, when the town voted to excuse the assessors chosen at the first meeting from serving, and chose three others who were duly sworn before proceeding to take the valuation and assess the taxes; and that it was then voted to raise the necessary sums for the repair of highways, for incidental charges, for the maintenance of the poor, and for the support of schools, amounting in the whole to $6900. Evidence was also introduced, on the part of the defendant, of the appointment in writing of Abel Aldrich, as deputy collector, by Stephen Taft, the treasurer and collector, on the 4th of June, 1842; that the deputy collector was duly sworn; and

that both the deputy and the treasurer and collector gave bonds according to law.

The defendant then produced in evidence the records of the valuation and assessment made in 1842, from which it appeared, that notice was duly given by the assessors to the inhabitants to bring in lists of their polls and estates for valuation ; that the above-mentioned real estate of the tenant was valued and assessed as already stated ; that the valuation and assessment thereon were filed in the office of the assessors, before the taxes were committed to the collector ; and that the taxes were so committed on the 16th of July, 1842. It also appeared, by the affidavit of Abel Aldrich, which was recorded by the town clerk on the 21st of September, 1843, at five minutes before twelve o'clock at noon, that the taxes in question were duly demanded of the tenant and of Emerson, on the 5th of October, 1842.

The notice of the collector's sale, which was introduced in evidence by the tenant, and proved to have been duly published three weeks successively in the Worcester Palladium, was in the following terms : —

" Collector's Notice. — The proprietors of the following described real estate in the town of Mendon are hereby notified, that the same is taxed in the tax list committed to the subscriber, deputy collector of taxes for said Mendon for the year 1842, as follows : —

Moses Buffum, house and land, $37·34. Loring Emerson, house, barn and one hundred and fifteen acres of land, $14·92. Enos Goss, (of Providence, R. I.) one half house, one half barn, and one half acre land, $2·28. And if no person shall appear, to pay said taxes on or before the 21st day of September next, I shall proceed to sell at the Coverdale Tavern, so called in said town of Mendon, at one o'clock, P. M., by public vendue, *so much of said real estate* as shall be necessary to discharge said taxes and all necessary intervening charges.                                        ABEL ALDRICH, Deputy Collector.

MENDON, August 17, 1843."

The defendant (after having offered in evidence an affidavit of William H. Aldrich, recorded in the registry of deeds, within six months after the sale, to prove the posting up of notice thereof, in Mendon, which affidavit, not being indorsed on the original advertisement, or a copy of the same, was therefore rejected by the court) called Aldrich as a witness, who testified that notice of the sale was put up

at the post office, and at the store of Davenport and Aldrich, in Mendon, he thought, in August, 1843 ; he was positive it was warm weather and the summer of that year; that he had searched for the original notice in the store and in the town clerk's office, but could not find it; that it was a notice for the sale of lands of Moses Buffum, Loring Emerson, and Enos Goss, for taxes, of which he made an affidavit at the time ; and that the notice set forth the time and place of sale, but he could not, of his own recollection, state such time and place. The defendant then proposed to inquire of the witness, whether the notice posted at Davenport and Aldrich's store was identical in its contents with the notice advertised in the Worcester Palladium ; but the court ruled that the witness could testify to such contents only from his own recollection.

Stephen Taft, called by the defendant, testified, that in 1842 he was town clerk of Mendon, and wrote for Abel Aldrich, the deputy collector, who signed and took the same, three notices, the form of which he copied from a book of forms, for the sale of certain estates for taxes, and the time and place of sale ; that he could not tell what property of Buffum was described; that the Emerson place was described either wholly or in part; that this was at one o'clock in the afternoon, but whether in August or September, or what day of the month, he could not say; that it was at Coverdale's tavern, where the sale was made to George A. Aldrich, soon after one o'clock in the afternoon.

It was agreed, that the Pitts farm or Emerson place was one entire farm of one hundred and fifteen acres; and from a plan of the Mansion house estate, occupied by the tenant, that the same consisted of one entire tract of land of about twelve acres, divided by the Blackstone river and canal, with the mansion house and several other buildings and houses upon it, constituting a manufacturing establishment, which the tenant had occupied and carried on for several years, though two of the small houses and lots were frequently let to tenants who had nothing to do with the manufactory.

The defendant, in order to show that he was not estopped

from setting up his title, under the sale for taxes, to a part of the demanded premises, gave in evidence his discharge under the bankrupt law of the United States, relating back to the 29th of November, 1842; also, a deed of conveyance of the premises in mortgage by the tenant to Henry S. Mansfield, dated August 27th, 1842; possession under the same by Mansfield on the 26th of December, 1842; a conveyance of the right of redemption by Dan Hill, the assignee of Buffum, to Wilder Holbrook, in June, 1844, in pursuance of a sale on the ninth of September, 1843; a subsequent release of the premises by Holbrook to Mansfield; and a deed of the same from Mansfield to Buffum.

Upon the whole case, thus proved, the presiding judge ruled that the tenant's title under the collector's sale was not sufficiently made out; and a verdict being thereupon rendered for the demandant for the whole of the demanded premises, the tenant alleged exceptions.

*P. C. Bacon*, for the tenant.

*B. F. Thomas*, for the demandant.

WILDE, J. The demandant's title in this case is derived from one Henry S. Mansfield by this deed of mortgage to Richmond Bullock, and by his deed of assignment to the demandant.

To this title, it was objected, at the trial, that the deed of assignment was inoperative, because Henry Martin, a notary public in the state of Rhode Island, taking the acknowledgment of it, did not authenticate his act by a notarial seal. This objection was overruled. And the first question is, whether it was rightly overruled.

By the Rev. Sts. c. 59, § 13, it is provided, that deeds of real estate may be acknowledged " before any justice of the peace in this state, or before any justice of the peace, magistrate, or notary public, within the United States, or in any foreign country."

The statute requires no notarial seal to the notary's certificate of the acknowledgment, and none, we think was necessary. The notary derived his authority from the statute, and it is no good objection to the validity of the certifi-

cate, that by the common law or the law merchant, notaries public are required to certify their acts and doings under their notarial seals. *Hinckley* v. *O'Farrell*, 4 Blackf. 185; *Dumont* v. *McCracken*, 6 Blackf. 355.

But the principal questions, which have been discussed, depend on the validity of the tenant's title, which is derived from a sale and conveyance of the demanded premises by a deputy collector of the town of Mendon for the payment of taxes. To this title several objections have been made, as to the assessment of the taxes, and as to the proceedings of the deputy collector in making the sale. But as to the objections to the assessment of the taxes we have not found it necessary to express an opinion; as we are satisfied, that the proceedings of the deputy collector, in making the sale, were not conformable to some of the requisites of the statute. Rev. Sts. *c.* 8, §§ 18, 24, 25. By the eighteenth section, it is provided, that sales for the non-payment of taxes assessed on the real estates of resident proprietors shall be conducted in the same manner as that provided for the sale of lands of non-resident proprietors; and by the twenty-fourth and twenty-fifth sections it is provided that the collector, in such cases, shall give notice of the time and place of sale, by an advertisement thereof in some newspaper, which shall state among other things the names of the owners, if known to the collector; and where the owners are not so known, the advertisement is to state the amount of the taxes on " the several rights, lots, or divisions of the real estate to be sold."

In the present case, the name of the owner was not stated in the advertisement. Before the sale, Mansfield, the mortgagee, had taken possession and was to be considered as the owner. Rev. Sts. *c.* 7, § 7. But it has been argued for the tenant, that it does not appear that the collector had notice of the entry of the mortgagee, and that it is to be presumed that he had not; that the description of the lots sold was not required by the Rev. Sts. *c.* 8, § 25; and that no such description was required until the statute of 1848, *c.* 166, § 3. But we consider the third section of the latter statute as explanatory of the former provision, in order to remove doubts, if

any existed; and if it were not so intended, and the legisla-ture supposed that no such description was required by the twenty-fifth section of the Rev. Sts., *c.* 8, we cannot concur in that opinion. Some description of the lots to be sold was required, or the notice would be of no use what-ever. So as to rights and divisions, the question would be, What rights and divisions? and it must be answered by a full and satisfactory description, so that the owner might know what rights, lots, or divisions were to be sold. It was also argued, that if a description were necessary, a sufficient description was contained in the notice. The only descrip-tion, if so it may be called, is, " Moses Buffum, house and land, and Loring Emerson, house, barn, and one hundred fifteen acres of land." This we consider a very uncertain description, and altogether insufficient. The owner's name not appearing in the notice, a full and clear description of the property to be sold should have been given.

Another objection to the validity of the sale is, that it does not appear that a similar notice was posted in some conven-ient and public place, as required by the twenty-seventh sec-tion. This objection, also, appears to the court well founded. William H. Aldrich, the witness who testified as to the time when a notice of the sale was posted, could not with certainty recollect the time. He thought it was in August. He was positive it was in warm weather, and in the summer. Tak-ing this evidence together, it is manifest that the witness was only positive that it was in warm weather; for although he adds that it was in the summer, this must be understood as an inference from the fact that it was in warm weather; for he could not be positive that it was in August; and it is clear, that if it was not, it was not in the summer; for he re-fers to his affidavit, in which it was stated, that the notice was posted in August; but that affidavit was not admitted in evidence, but the witness no doubt had seen the affidavit, and he certainly had a right to examine it to refresh his recol-lection; yet he would not be certain, that the notice was posted in August.

Another defect in the evidence on this point is, that

although the witness testified that the notice set forth the time and place of sale, yet he would not state the time and place from his recollection; and this defect is not supplied by the testimony of Stephen Taft, who wrote, as he testified, three notices for Aldrich, for it does not appear that any one of them was the one Aldrich put up at the post office. Aldrich did not testify that it was. It may be probable that it was; but probability is not sufficient.

But it has been argued for the tenant, that although the evidence as to the notice was weak, it should have been submitted to the jury; but, we think, if it had been so submitted, and a verdict had been found for the tenant, we should be bound to set it aside as a verdict against evidence. There was no such description of the property sold as the law requires in the notice published in the newspaper; and the evidence of posting a notice is insufficient, both as to the time when it was posted, and as to the contents of the notice.

In a sale like this, where a large and valuable property has been sold for a mere trifle, a compliance with all the provisions of the statute should be proved with great certainty in every particular; and one of the most important particulars is the notice to the owner, when he is a non-resident, or, as in the present case, where the tax was not assessed to the owner at the time of the sale. These objections, therefore, to the tenant's title fully sustain the rulings of the court at the trial. *Exceptions overruled.*